### WILLIAM SOMERS vs. ROBERT WRIGHT.

Suffolk.    March 31. — June 20, 1874.    AMES & DEVENS, JJ., absent.

A. agreed in writing under seal to sell by warranty deed a lot of land to B. for a certain sum payable in lumber " at current retail prices." The land was subsequently conveyed, a mortgage upon it still existing, and an agreement in writing under seal was made between A. and B. reciting the conveyance of the land subject to a mortgage, " which mortgage was according to previous agreement to have been discharged prior to said conveyance." A. also covenanted to discharge the mortgage before a certain day, and it was agreed that B. should not pay the lumber agreed upon as the price, above the amount of the mortgage, computed at the current retail price of the lumber delivered. A. did not discharge the mortgage, and B. paid it to prevent foreclosure. *Held*, that B. in an action for breach of the second contract was entitled to recover the loss of profits which would have accrued by the delivery of the lumber, and that the measure of damages was the difference between the wholesale and the retail price of the lumber.

Where the measure of damages is the plaintiff's loss of profits in having to pay cash when he is entitled to pay in a particular kind of goods at retail prices, evidence of the profits of any particular dealer in such goods is incompetent.

When a part of the consideration for the purchase of a house conveyed by A. to B. was the agreement of B. & Co. to deliver a quantity of lumber to C.; and A. agreed to discharge a mortgage on the house before a certain day, a refusal by B. & Co. before said day to perform their agreement is no excuse for a failure on the part of A. to perform his, although B. & Co. were the parties beneficially interested in the house.

The vendor of land agreed to pay off a mortgage at a time certain, the vendee retaining by agreement a part of the consideration until the mortgage was discharged; the vendor failed to discharge the mortgage at the time agreed upon, and the vendee paid the amount due with interest thereon some months subsequent to the time at which the vendor agreed to discharge it. *Held*, that vendee was not entitled to recover the interest paid which accrued after the date at which the vendor agreed to discharge the mortgage.

CONTRACT to recover damages for breach of the following agreement signed and sealed by the plaintiff and the defendant: " This agreement, dated the ninth day of December, 1869, by and between William Somers and Robert Wright, both of Boston, in the County of Suffolk and Commonwealth of Massachusetts, witnesseth, that whereas said Wright has this day conveyed to said Somers, by deed of warranty, a certain lot of land on Windsor Street, in said Boston, subject to a mortgage to secure the sum of five thousand dollars, which mortgage was, according to previous agreement, to have been discharged prior to said conveyance as aforesaid. Now, therefore, said Wright, in consid-

eration of one dollar and divers other considerations to him paid by said Somers, covenants and agrees with said Somers that he will discharge said mortgage of $5000 before the first day of April, 1870, and will save harmless therefrom said Somers and his heirs ; and it is mutually agreed and understood between the said parties hereto, that said Somers shall not pay the lumber agreed upon as the price and consideration of said conveyance of real estate above the sum of $5000, computed at the current retail price of the different kinds of lumber delivered, until said mortgage of $5000 is discharged, and the property is entirely free from any incumbrance ; but said Somers agrees to deliver lumber according to the order of said Wright, to the limit above mentioned."

The declaration, after setting forth the above contract, averred that the conveyance was in pursuance of a previous agreement in writing between the plaintiff and the defendant whereby the plaintiff was to purchase and the defendant to sell said lot of land for $5600, to be paid by the plaintiff in lumber at current retail prices ; that there was a mortgage of $5000 on the estate, which the defendant did not discharge upon April 1, 1870, according to the agreement, nor at any time thereafter, and that the plaintiff was obliged to pay the amount when due, together with one year's interest thereon, in order to save his estate from foreclosure. The declaration also averred readiness on the part of the plaintiff to deliver lumber to the amount of $5000, at current retail prices ; that the plaintiff was compelled to pay the mortgage and interest in cash, whereby he was deprived of the profit upon the sale of $5000 worth of lumber at current retail prices.

At the trial in the Superior Court, before *Putnam*, J., the jury returned a verdict for the plaintiff, and the defendant alleged exceptions in substance as follows :

It appeared in evidence that on or about December 9, 1869, the plaintiff and the defendant executed the agreement set forth in the declaration ; that there had been a previous agreement between them under seal with reference to the same subject matter, dated November 1, 1869, by which the defendant agreed to convey and the plaintiff to purchase the estate mentioned in the second agreement for the sum of $10,600 in lumber, at current retail prices ; that the defendant executed to the plaintiff a warranty

deed, and gave him possession of the house and land mentioned in said agreement, subject to a mortgage of five thousand dollars, as set forth in the declaration and agreement ; that on or about the same time, and as a part of the same transaction, William Somers & Company, a firm composed of the plaintiff and others, executed and delivered to Luther Farwell a due bill or note for $5600, payable in lumber; that Farwell, prior to and up to the time of the execution of said agreement and the delivery of said deed, had a second mortgage upon said house and land, and that this due bill was given to Farwell as a consideration for the discharge of said mortgage, which was due at this time; that this was done at the request of the defendant, and that the due bill was a part of the consideration of the deed from the defendant to the plaintiff; that William Somers & Company were the parties beneficially interested in said agreement, and that William Somers held the premises conveyed in said deed for the benefit of or in trust for William Somers & Company; that the defendant did not pay said mortgage nor the interest accruing thereon, but that the plaintiff or William Somers & Company paid the interest on the same at 7½ per cent. from September 2, 1869, to August 20, 1870, amounting to $362.50, and then paid the principal. The presiding judge ruled that the plaintiff could recover for the loss of profits as claimed in his declaration, and the defendant excepted.

The defendant then called Joseph Goodnow, who testified that there was the least profit upon spruce lumber, and put to him this question : " Take it in the winter of 1869 and '70, between December 1 and April 1, what would be the fair net profits on spruce lumber ? " This question was objected to by the plaintiff's counsel and excluded by the court, on the ground that the net profits of any particular dealer or dealers was not evidence tending to show what the loss of profits by the plaintiff was. The defendant's counsel then stated that he proposed to show by men dealing in lumber, having wharves and of long experience in the business, what the net profits on certain kinds of lumber were. The court excluded this offer, and the defendant excepted. The court ruled, however, that as the defendant would have the privilege of selecting the lumber which yielded the least profit, the evidence might be confined to spruce lumber, and that the defendant might show by these witnesses what the

difference between the wholesale and retail price of spruce lumber was at the time, and the defendant accordingly examined Goodnow and the other witnesses upon this point, and the court ruled that the measure of damages would be the difference between the wholesale and retail price of spruce lumber, what the plaintiff could obtain for that amount of lumber at wholesale and what was a fair retail price for it, to which ruling the defendant excepted.

The defendant was examined, and testified that the deed from him to the plaintiff, the contract declared upon, and the due bill for $5600 were all delivered at the same time, and on or about December 15, 1870, when the deed was recorded, and that Luther Farwell took the due bill in his name, as collateral for Wright's indebtedness to him, and that at various times afterwards Somers & Co. delivered to Farwell, to be used on houses Wright was building, and to various other parties, lumber to the amount of about $4000.

He further testified that on February 23, 1871, he took the following order, signed by the defendant, to Somers & Co., and then indorsed it, leaving it with them and taking a receipt for it : " Boston, Feb. 22, 1870, — Messrs. Wm. Somers & Co. Dear Sirs, Please send me such lumber as may be selected by Mr. Emerson, or ordered by Mr. Robert Wright, to be sent to my houses on Ball Street, on Shawmut Avenue, (and nowhere else,) to an amount not exceeding one thousand dollars, to apply on your due bill of December 10, 1869, to the amount of $5,600, payable to me in lumber, Luther Farwell ; " that the Mr. Emerson named in said order was furnishing labor for Wright on the Ball Street houses, the title to the land standing in Farwell's name as collateral for advances made by him to Wright, and he offered to show that immediately after the delivery of said order to Somers & Co. and at various times thereafter before April 1, 1871, he demanded of said Somers & Co. lumber for said Ball Street houses and elsewhere, which they refused to deliver, with the exception of about two hundred dollars' worth which was delivered at the Ball Street houses, and about two hundred and eighty dollars' worth delivered at East Boston immediately after the order was delivered. The plaintiff's counsel objected to this evidence, and any evidence tending to show that all the lumber had not

been delivered under the $5600 order payable in lumber, and that if any default on their part in this respect existed they were answerable to Farwell therefor and not to the defendant. The defendant contended that there was nothing to show that it was given in satisfaction thereof, and that it was a question for the jury whether said paper was given to Farwell in satisfaction of the plaintiff's obligation under said contract, upon the whole evidence and under proper instructions from the court. The defendant was asked by the court : " I understand you to say that this order for $5600 was given at the same time the deed was delivered, and at the same time the agreement in the suit was delivered ? " The defendant answered, " Yes, sir ; Mr. Farwell was to hold that for my benefit ? " The court then ruled that the question whether all the lumber under the due bill to Farwell had been delivered was immaterial in this suit, and that a refusal on the part of the plaintiff to deliver lumber on the request of Wright thereafter would not be such a breach of his obligation as the defendant could avail himself of in defence of this suit, the defendant excepting.

The case was submitted to the jury to find the amount of damage occasioned by the loss of profits on the amount of $5000 worth of lumber, the court instructing the jury on this branch of the case as explanatory of the rule of damages, which it had before laid down, as follows, to which no additional exception was taken, except as to the ruling in relation to interest.

" The next question is, what is the plaintiff entitled to recover ? If this were a cash transaction, he would be entitled to recover the $5000 and interest. But it was not a cash transaction. It was to be paid in lumber, and he was to keep back this $5000 worth of lumber until the mortgage was paid off. So that, the mortgage not having been paid off, he has got his $5000 in lumber. Therefore he cannot recover the $5000 in cash ; he can only recover the loss of profits, from the fact that the lumber was to be put in to the defendant at a fair retail price. So that his loss upon the transaction has been simply the difference between what that lumber cost him at wholesale, and what was a fair retail price for it, whatever that difference may have been, that he is entitled to recover, in addition to the $362.50 and interest.

" There have been several witnesses brought, on the one side and the other, — all the witnesses agree, substantially, who say that a fair retail price would have been from twenty-two to twenty-four dollars a thousand. I believe there is no dispute, substantially, between the witnesses on that point. Therefore it may be fair to take twenty-three dollars a thousand as the retail price, — dividing the difference between twenty-two dollars and twenty-four dollars, which, upon the whole evidence, coming from the defendant's own witnesses as well as the plaintiff's, was a fair retail price for the lumber at the time. The only question, then, is, what that lumber cost Somers & Co., and the difference between that cost, and what he had promised to sell it for, would be his loss. And that depends upon what was the market value, at wholesale, of spruce lumber at that time, because all parties agree that it shall rest upon the basis of spruce lumber, that being, I believe, the lowest priced lumber in the market. Therefore you will take the evidence upon that point, and the difference between the wholesale and retail price, of course, will be the loss. Whatever you find the loss to be, the plaintiff is entitled to interest on that sum, from the date of the writ. Take, then, the interest paid, three hundred and sixty-two dollars, with interest upon that sum from the date of the writ; take the loss of profit, whatever you may find it to be, with interest upon that sum from the date of the writ, October 7, 1871, add the two sums together, and your verdict will be for the plaintiff, for the gross amount."

The jury found for the plaintiff, that the loss of profits was $823.62, and that the damage suffered by him on account of interest paid by him, was $398.09, and the defendant excepted.

*N. Morse,* for the defendant.

*M. Williams, Jr.,* for the plaintiff.

Colt, J. By the terms of the purchase the plaintiff had the right to pay in lumber " at current retail prices " for the estate which the defendant conveyed to him. There was no time named for the delivery of the lumber, and the consideration for the deed was due when the conveyance was made. The property was subject to a mortgage for $5000, which the defendant agreed to discharge before the first of April following, giving the plaintiff the right to withhold lumber to the amount of the incumbrance until it was removed, and the plaintiff at the same time giving to one

Farwell a due bill of the firm of which he was a member, payable in lumber on demand, for the balance of the consideration. The defendant did not obtain a discharge of the mortgage as agreed, and the plaintiff paid the same when due with one year's interest to August 20, in order to save his estate from foreclosure.

This action is to recover the profits which would have accrued to the plaintiff by the delivery of $5000 worth of lumber at retail prices instead of cash, with the interest paid on that sum.

It was contended that the plaintiff could not under this agreement and declaration recover for loss of profits. But the agreement, as applied to the subject matter, and the relations of the parties under another contract expressly referred to, clearly shows that the loss of profits claimed is the loss which must necessarily and directly arise from its breach, and which must have been contemplated by the parties when the contract was made. Profits of this description may be recovered, although as a general rule the profits of a future transaction are regarded as an element too remote to be taken into account in the estimate of damages. *Fox* v. *Harding*, 7 Cush. 516. *Masterton* v. *Brooklyn*, 7 Hill, 61.

The defendant then offered to show the net profits realized by one of his witnesses who was a lumber dealer, on sales of lumber made by him during the time in question. This was excluded as being too remote in its tendency to show the plaintiff's actual loss of profits, and no exception properly lies to its exclusion. The profits of any one particular dealer would not be a fair criterion of the plaintiff's loss.

The ruling that the measure of damages would be the difference between the wholesale and retail price of lumber, or the difference between what the plaintiff could obtain for it at wholesale and at retail, as afterwards explained in the judge's charge, must be construed to have required the jury to find what the plaintiff lost by being deprived of an opportunity to sell at retail prices. This depended on the market value of such lumber at wholesale. The instructions taken together do not necessarily imply, as the defendant contends, that the jury must find the difference between what the plaintiff paid for lumber when he bought at wholesale and what he sold for at retail, but rather that they must find the difference on sales made at wholesale and at retail.

There was no error in the ruling that a refusal to deliver lumber upon the due bill given to Farwell by the firm would not be such a breach of the plaintiff's agreement as would excuse the defendant from the performance of his obligation to take up the mortgage. The due bill was given at the request of the defendant and as part of the consideration for the deed to him. Farwell held it as collateral security and by good legal title. The obligation assumed to Farwell was a discharge to that extent of the defendant's ·claim on the plaintiff. A failure to deliver to Farwell or his order would be a breach of the contract of the firm for which they might be responsible to him, but it would afford no defence in an action at law between the parties to this contract, notwithstanding the equitable considerations suggested.

But the ruling of the court as to the recovery of interest which accrued on the mortgage after the first of April is erroneous. The plaintiff took immediate possession of the property upon the delivery of the deed. The whole consideration was then due, except so far as it was postponed by the agreement in regard to the mortgage. That agreement was broken on the first of April, and the plaintiff's rights were fixed. The payment of the mortgage in cash was one mode of paying the balance of the consideration then due. But the plaintiff would have no claim on the defendant for interest which accrued after that date. He is indemnified if he recovers his loss of profits and the interest on the mortgage to April first, — that amount of interest being so much in excess of the consideration agreed on for the deed. To this extent the defendant's exceptions are sustained, unless the plaintiff chooses to remit the excess and take judgment for the reduced amount. *Ordered accordingly.*