New York Bank Note Company *vs.* Kidder Press
Manufacturing Company & another.

Suffolk.   January 19, 1900. — May 18, 1900.

Present: Holmes, C. J., Morton, Lathrop, Barker, & Hammond, JJ.

*Receivers — Decree — Assent of Creditors — Preference.*

A . creditor, at whose request receivers have been appointed to administer the assets of a corporation, and who, together with all other parties in interest, has assented to a decree directing the receivers of a corporation to carry on the business as a going concern, and out of the money then on hand or thereafter to be received to pay all outstanding commercial paper of the corporation as it should mature, together with all legitimate expenses, and who also has assented to a later decree directing a sale of the assets and the raising of a fund then in court, cannot justly compel the holders of the commercial paper and the receivers to await the ultimate determination of the amount of his claim pending in another jurisdiction, and, if it should be so large that all demands and expenses could not be paid in full, to have partial payment only.

BILL IN EQUITY, to restrain the foreclosure of a mortgage or trust deed executed by the first named defendant to Eugene A. Bascom, and praying for the appointment of a receiver of the first named defendant, and that the trust under the mortgage be executed by applying the proceeds of the property to the payment of the outstanding indebtedness of the first named defendant. Trial in the Superior Court, before *Braley*, J., who ordered a decree directing the receivers to pay a certain sum incurred by them in carrying on the business, certain promissory notes, and a certain sum for counsel fees, and reported the case for the determination of this court, such decree to be entered as justice might require. The facts appear in the opinion.

*E. P. Lyon,* (of New York,) for the plaintiff.

*V. J. Loring*, (*H. M. Aldrich* with him,) for the first named defendant.

BARKER, J. Pursuant to a prayer of the plaintiff the receivers were appointed on June 20, 1898. The decree defining their duties was assented to by all the parties to the cause, and the plaintiff alone now objects to the subsequent decree, ordering the receivers to make certain payments, and which is before us upon the report. By the decree of June 20, 1898, the receivers

were directed to carry on the business of a manufacturing company as a going concern, and out of the money then on hand or thereafter received to pay all its outstanding commercial paper as the same might mature, the company, however, to have liberty to renew from time to time all or any of such paper. Four notes of the company were then outstanding, which would mature after that date. None of them were renewed, and all of them had matured before the entry of the decree which is brought here by the report of January 4, 1900. That decree ordered the receivers to pay the four notes with accrued interest, and also to pay a sum of $1,613.10, owing by the receivers for supplies used by them in carrying on the business, and a further sum of $5,329.53, allowed them as fees paid counsel, that sum having been fixed by the report of the master, confirmed by the court after exceptions to it had been overruled.

The fund from which the receivers have been ordered to make these payments is made up of the proceeds of sales made by order of court. On September 20, 1897, the manufacturing company made a trust deed to the defendant Bascom, containing a power of sale. On January 19, 1899, a decree was entered by consent of all parties to the cause, and of all persons interested in the trust deed, directing Bascom and the receivers to sell all the property covered by the trust deed, and also any assets of the manufacturing company not so covered, the proceeds of the sales to be brought into court. A sale under the decree was made on March 1, 1899, and the proceeds, amounting to $72,062.83, were paid into court, and constitute the fund in question, less a sum of $500 which has been allowed to the receivers for expenses in certain litigation pending in Ohio. The report states that no separation of the amount received from the sale of property covered by the trust deed, and of the amount received from the sale of other assets, has been or can be made.

The plaintiff's demand is for damages, not yet liquidated, for breach by the manufacturing company of a contract made by it on October 12, 1891. The bill alleges that such breaches were committed in December, 1892, and in August, 1893, and that the manufacturing company owes the plaintiff for these damages a sum not less than $20,000; and also that, in a suit now pending in the courts of New York, in favor of the plaintiff against another

bank note company and the manufacturing company, it was adjudged on June 8, 1898, that the plaintiff should recover from the manufacturing company the damages which the plaintiff had sustained by the breaches of the contract alleged in the bill in this action; and that the New York action was thereupon sent to a referee to determine the amount of such damages, and is yet pending. The bill also alleges that the trust deed of September 20, 1897, was made for the principal purpose of cheating the plaintiff out of its said claim for damages by doing away with the assets of the manufacturing company, so as to defeat the collection of any judgment which the plaintiff may recover in the New York· action.

A cross bill was filed by the manufacturing company on July 13, 1898, and answers to the original bill were filed by that company and by the trustee Bascom on July 20, 1898. The answer of the plaintiff in the original bill to the cross bill was filed on October 13, 1898. The general result of these pleadings is that the right of the plaintiff in the original bill to recover any damages of the manufacturing company is denied. In this state of the pleadings, the decree of June 20, 1898, appointing the receivers and defining their duties and powers standing unmodified, the decree of January 19, 1899, directing the sale of all the assets of the manufacturing company, was entered by consent of the plaintiff, and the order directing the payment by the receivers out of the fund raised by the sale, of the sums together amounting to about $26,000, was made.

In dealing with the question whether these payments were rightly ordered, we assume in favor of the plaintiff, without so deciding, that its right to have damages from the manufacturing company has been fixed by the alleged judgment of June 8, 1898, in the New York court, and that such damages are so large that if the payments ordered shall be made the balance of the fund in court will be insufficient to pay the plaintiff's damages; and also that the trust deed in providing that the trustee should hold the property conveyed by it " to pay all and every the existing indebtedness or liabilities of the " manufacturing company applied as well to the plaintiff's demand for damages as to other debts or liabilities, so that the commercial paper of the company would have no preference in the administration of the trust fund.

These assumptions being made in favor of the plaintiff, the answer to its contention that neither the commercial paper of the manufacturing company which was outstanding on June 20, 1898, the expenses incurred by the receivers in carrying on the business, nor those incurred by them for counsel fees in discharging their duties as receivers, shall now be paid out of the fund in court is this.   When the plaintiff asked the court to appoint receivers to take possession of all the assets of the manufacturing company, and to administer and wind up the same, it was met by an immediate and complete denial of any right on its part to share in those assets.   In this position of affairs the plaintiff saw fit to consent to a decree appointing the receivers, directing them to carry on the business as a going concern, and out of the money then on hand or thereafter to be received to pay all outstanding commercial paper of the manufacturing company as it should mature unless renewed.   No one contested the right of the holders of such paper to payment.   Those holders were in a position to contest the appointment of receivers. The bill did not allege that there was a deficiency of assets to discharge in full all the liabilities of the manufacturing company.   In consenting to the decree of June 20, 1898, the plaintiff must be taken to have consented, as one of the terms upon which receivers would be appointed, that the commercial paper of the manufacturing company then outstanding should be paid, as it matured, by the receivers out of any money which should come to their hands, and also that they should be reimbursed for all their legitimate expenses as receivers.   There has been no modification of that decree, and the plaintiff has also consented to the decree of January 19, 1899, directing the sale and the raising of the fund now in court.   It cannot be assumed that either of those decrees would have been assented to by the other parties interested, or would have been entered by the court, but for the consent of the plaintiff to the payment of the outstanding commercial paper as it should mature, and of the expenses of the receivers, out of the fund, and without waiting the ultimate determination of the amount of the plaintiff's claim.   Under these circumstances it would now be unjust to compel the holders of the commercial paper of the manufacturing company and the receivers to await the ultimate determination of the amount

of the plaintiff's claim, and if it shall be so large that all demands and expenses cannot be paid in full, to have but partial payment only.

The plaintiff sought to have the assets of its debtor administered upon the footing that the commercial paper of the debtor and the expenses of administration should be met in full. It cannot now be allowed to change that footing and thereby to compel those who have assented to its scheme for its own relief to wait longer, or to run the chance of receiving less than their due.                    *Decree of the Superior Court affirmed.*