NEW YORK BANK NOTE COMPANY *vs.* KIDDER PRESS
MANUFACTURING COMPANY & others.

Suffolk. May 14, 1906. — June 20, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Contract,* Validity. *Equity Jurisdiction,* To enforce negative contract, Laches.
*Anti-trust Law. Corporation, Ultra vires. Estoppel. Assignment. Equity
Pleading and Practice,* Defences, Hearings before master, Master's report, Petition
to intervene. *Damages,* In equity for breach of contract. *Interest. Release.
Payment.*

A contract in writing between a corporation which prints and sells strip tickets
used by transportation companies and a corporation manufacturing an im-
proved printing perfecting press, by which the manufacturing corporation sells
a press to the printing corporation and agrees not to sell this type of press to
other customers to be used by them for a similar purpose but reserves the
right to make and sell the press for other uses for which it may be adapted, is
valid.

If in a suit in equity by a corporation which sells strip tickets used by transpor-
tation companies, seeking damages from a corporation manufacturing an im-
proved printing perfecting press for the alleged breach of an agreement in
writing not to sell the type of press sold to the plaintiff to other customers to
be used for a similar purpose, the defence that the contract sought to be en-
forced is void as in violation of 26 U. S. Sts. at Large, 209, commonly known as
the anti-trust law, must be pleaded specially, and if the defendant files an
answer and a cross bill in neither of which the point is taken, this defence is
not open to the defendant.

If a corporation, organized under the laws of another State for the purpose of
making and dealing in printing presses, sells a press to a corporation which
sells strip tickets used by transportation companies and agrees in writing not
to sell the same type of press to other customers to be used for a similar pur-
pose, and receives and retains the price paid for the press and for its agreement,
it cannot be permitted to repudiate its agreement as being in excess of its
corporate powers.

If a corporation which prints and sells tickets used by transportation companies
makes a valid contract in writing with a corporation manufacturing an improved
printing perfecting press by which the manufacturing corporation sells it a press
and agrees not to sell this type of press to other customers to be used by them
for a similar purpose, the contract containing no provision for its assignment,
and later in a reorganization the printing corporation conveys and assigns all
its corporate property including choses in action to a new corporation, the
manufacturing corporation not assenting to the assignment, the assignment
passes to the new corporation any right of action against the manufacturing
corporation for a breach of its agreement which occurred before the assign-
ment, but does not assign the contract.

After a master has made a draft report and submitted it to the counsel for the

parties, it is within his discretion to determine how far if at all he will reopen the hearing and admit further evidence offered by either party after hearing their objections and before finally settling his report.

Where an order referring a case to a master does not require him to report the evidence and he does not report it, exceptions to his report which depend on a different view of the testimony from that taken by the master or which are based on the ground that some of his findings are not supported by sufficient proof cannot be considered.

An exception to the admission of evidence by a master cannot be sustained, although the evidence was admitted erroneously, if its admission has been made immaterial by the fact that neither the findings of the master nor those of the judge who heard the case were affected by it.

In a suit in equity by the assignee of the property and choses in action of a corporation which was engaged in the business of printing and selling strip tickets to transportation companies, against a manufacturing corporation which had sold a press to the plaintiff's assignor under a valid contract in writing by which it agreed not to sell this type of press to other customers to be used by them for a similar purpose, seeking to recover damages for a breach of this contract before the assignment by the sale of a press to another corporation to be used for a similar purpose, the measure of damages is the difference between the value of the press purchased by the plaintiff's assignor when fitted for use in printing strip tickets and protected by the restriction of the contract and its market price after the depreciation caused by the defendant's sale in violation of the contract, with interest from the date of the breach.

Where a plaintiff is entitled to damages for a breach of contract he also is entitled to interest from the date of the breach as compensation for delay in payment.

In a suit in equity by the assignee of the property and choses in action of a corporation which was engaged in the business of printing and selling strip tickets to transportation companies, against a manufacturing corporation which had sold a press to the plaintiff's assignor under a valid contract in writing by which it agreed not to sell this type of press to other customers to be used by them for a similar purpose, to recover damages for a breach of this contract by the sale of a press to another corporation to be used for a similar purpose, a decree was made that the plaintiff was entitled to damages in a certain amount named, but the further facts appeared that the plaintiff first had brought an action of contract in this Commonwealth, to which the suit in equity was ancillary, and then had brought an action in another State against the corporation to which the press had been sold by the defendant in violation of its contract, and in the action in the other State had been compelled to join the defendant as a party, and thereafter had received from the purchasing defendant in the action in the other State a sum of money in settlement of all damages and had executed a release under seal to that defendant of all damages and demands, and had consented to an order discontinuing the action in the other State as against the defendant paying the money, the release executed by the plaintiff containing a declaration that it was not intended to release any claim which the plaintiff had against the defendant in the Massachusetts suit ¦ who sold the press to the plaintiff. *Held*, that, even if the reservation by the plaintiff of his claim against the defendant in the release prevented that instrument from being a full discharge, the payment was to be treated as a partial satisfaction and must be applied by the plaintiff in reduction of the sum awarded to him by the decree.

The petition of a foreign corporation to intervene in a suit in equity in this Com-

monwealth properly may be denied when for many years the petitioning corporation has been engaged in litigation in another State founded upon a contention contrary to that which it alleges as the ground for its admission as a party, and where its admission would delay the doing of justice between the parties already before the court.

BILL IN EQUITY, filed in the Superior Court on June 13, 1898, by the New York Bank Note Company, a corporation organized under the laws of the State of West Virginia and having its principal place of business in the city of New York, the successor under a reorganization of a corporation of the same name organized under the laws of the State of New Jersey, against the Kidder Press Manufacturing Company, a corporation organized under the laws of the State of Connecticut and having its principal place of business in the city of Boston, and Eugene A. Bascom, having a usual place of business in Boston, the assignee under a voluntary conveyance from the Kidder Press Manufacturing Company of its entire assets, in trust, alleged to be in fraud of the plaintiff's rights, praying, first, that the defendant corporation and the defendant Bascom might be enjoined from selling or disposing of any of the assigned property under or in accordance with a published notice of a mortgagee's sale, second, that the defendant Bascom might be enjoined from continuing and conducting hereafter the business of the defendant corporation and from making any new contracts for the manufacture of printing presses for others, third, that some suitable person might be appointed as receiver to take possession of all the assets and property of the defendant corporation and administer and wind up the same under the order of this court, fourth, that the trust created under the conveyance to the defendant Bascom might be executed only under the order and direction of this court, and that the defendant Bascom, or some suitable person appointed as trustee in his place, might be ordered and adjudged to collect as soon as might be all bills receivable, and debts due the defendant corporation and sell for cash all manufactured and salable product now on hand and apply the proceeds in payment of the outstanding indebtedness of the defendant corporation, and fifth, for further relief.

By an interlocutory decree of June 20, 1898, receivers were appointed. On July 13, 1898, a cross bill was filed by the Kidder

Press Manufacturing Company by leave of court.   On September 27, 1898, the original plaintiff filed a petition for the removal of the receivers, and the appointment of others in their stead. By a decree of January 19, 1899, the receivers and certain creditors of the corporation on their petition were made parties to the suit.   On May 28, 1902, the receivers filed their fourth report and a petition for an order of final distribution or for instructions.   On May 2, 1904, the plaintiff filed a petition for distribution.

On February 13, 1905, there was a hearing upon the petition of the receivers for distribution or for instructions filed May 28, 1902, and an interlocutory decree was made that the case be assigned for hearing on April 3, 1905, at the equity session of the Superior Court upon the issue whether or not the plaintiff was a creditor entitled to participate in the fund in court, and that the petition of the receivers be reserved for the further consideration of the court.

On April 3, 1905, an order was made under Chancery Rule 35 appointing a commissioner to take the evidence to be reported to this court.

On May 1, 1905, *Fessenden*, J. made the following decree:

" This cause came on to be heard under the interlocutory decree dated February 13, 1905, and after hearing evidence and arguments of counsel, it appearing to the court that the contract of October 12, 1891, between the New York Bank Note Company of New Jersey and the defendant the Kidder Press Manufacturing Company was entered into by and between such parties, as stated in the plaintiff's bill, and that the said contract was afterwards assigned by the said New York Bank Note Company of New Jersey to the plaintiff by an assignment dated December 27, 1892; and it appearing to the court that said contract was not assignable without the assent of said defendant; and it further appearing to the court that said assignment was not assented to by the said defendant; and it further appearing to the court that the said defendant prior to said December 27, 1892, and in said December, 1892, committed a breach of said contract as follows, viz : by the sale of a certain press to the Hamilton Bank Note Engraving and Printing Company, and that the plaintiff by virtue of said assignment acquired a right

of action against said defendant for and on account of said breach of said contract, and that said defendant prior to said assignment committed no other breach of said contract, and that in such respect and such respect alone the plaintiff is a creditor of said defendant; thereupon and in consideration thereof it is ordered, adjudged and decreed that this cause be, and the same hereby is, referred to James R. Dunbar, Esquire, as special master, to hear the parties and to determine the amount of damages, if any, occasioned by such breach of such contract, the hearings to begin forthwith and to continue from day to day, said special master to file his report on or before the first Monday of July, 1905."

The defendant corporation appealed "from so much of the decree of this court, dated May 1, 1905, as finds that prior to December 27, 1892, and in December, 1892, the defendant committed a breach of the contract of October 12, 1891, referred to in said decree, by the sale of a certain press to the Hamilton Bank Note Engraving and Printing Company, and that the plaintiff by virtue of the assignment dated December 27, 1892, referred to in said decree, acquired a right of action against the defendant for and on account of said breach of said contract, and that in such respect the plaintiff is a creditor of the defendant."

On June 6, 1905, the New York Bank Note Company, organized under the laws of the State of New Jersey, filed a petition for leave to intervene. The petition was denied; and that corporation appealed.

On November 8, 1905, the special master filed a report. He found that the damages caused by the breach of contract were $11,400; that the right of action to recover such damages passed from the New Jersey company to the plaintiff by assignment; and that the damages which the plaintiff was entitled to recover were $11,400, and interest thereon from December 24, 1892.

Both the plaintiff and the defendant corporation filed exceptions to the report.

On January 27, 1906, *Fox*, J. made a decree overruling all the exceptions of both parties and confirming the report, ordering that the clerk pay to the plaintiff out of the fund-deposited with him by the receivers the sum of $20,349, being the damages found due by the master as the depreciation in value of the

printing presses owned by the New York Bank Note Company of New Jersey at the time of the breach of contract and caused by the breach, and interest thereon from December 24, 1892, to the date of the decree, with interest on that sum from the date of the decree to the date of payment, and the further sum of $583.88 as costs. The defendant corporation appealed.

On February 19, 1906, the receivers by leave of court filed an amendment to their petition for an order of final distribution or for instructions, alleging that the New York Bank Note Company of West Virginia on February 6, 1906, received from the Hamilton Bank Note Engraving and Printing Company of New York the sum of $12,500 in full settlement of all damages occasioned by the breach of the contract of October 12, 1891, between the New York Bank Note Company of New Jersey and the Kidder Press Manufacturing Company, including all damages occasioned by the sale of the Kidder Perfecting Press in December, 1892, the basis of the master's report and the decree of January 27, 1906; that the New York Bank Note Company executed to the Hamilton Bank Note Engraving and Printing Company a release under seal of all damages and demands, including all damages occasioned by the breach of December, 1892; that the New York Bank Note Company had consented to an order discontinuing the action as against the Hamilton Bank Note Engraving and Printing Company; that the action had been discontinued by the court as against the Hamilton Bank Note Engraving and Printing Company, a copy of the agreement for discontinuance being annexed; and that the payment, release and discontinuance were a bar to any further recovery of damages by the New York Bank Note Company against the said Kidder Press Manufacturing Company; praying the court to hear and determine the question whether the payment, release and discontinuance were such a bar, and if the court should determine such to be the effect of the payment, release and discontinuance, that the receivers might be allowed to pass their final accounts, and that an order of distribution of the surplus assets among the stockholders of the Kidder Press Manufacturing Company might be made, or for further instructions from the court.

The plaintiff filed an answer to the amendment of the receivers' petition, alleging that it received the sum of $12,500 named in the amendment from the Hamilton Bank Note Engraving and Printing Company in settlement of a separate and distinct cause of action against that company; that the release included no damages or demands occasioned by the breach of contract mentioned in the amendment; also that the settlement with the Hamilton Bank Note Engraving and Printing Company was entirely made, executed and carried out in the State of New York, and that by § 1942 of the Code of that State "joint debtors may compound separately"; so that even assuming that the Hamilton Bank Note Engraving and Printing Company and the Kidder Press Manufacturing Company were joint debtors of the plaintiff, which the plaintiff denied, the causes of action against the Hamilton Bank Note Engraving and Printing Company and that against the Kidder Press Manufacturing Company were entirely separate and distinct.

The release executed by the plaintiff contained the following declaration:

"This release is not intended to release any claim which said New York Bank Note Company now has or may have against the Kidder Press Manufacturing Company, a Connecticut corporation, and is made in pursuance of the statute in such case made and provided."

On March 7, 1906, the case came on to be heard before *Richardson*, J., who reported it to this court as follows:

"This cause came on to be heard before me after the appeal taken by the defendant Kidder Press Manufacturing Company from the decree entered herein on January 27, 1906, upon the amendment to the receivers' petition for order of final distribution which amendment was filed on February 19, 1906, and upon the answer of the plaintiff to said amendment, and having heard the parties thereon, I make the following findings of fact in addition to the facts already appearing in the record on appeal from the decree of January 27, 1906, which record is made a part of this report, upon all the material issues raised by said amendment and answer, and report the same to the full court.

"The plaintiff corporation received from the Hamilton Bank

Note Engraving and Printing Company of New York on February 6, 1906, the sum of $12,500 and assented to the discontinuance as against the Hamilton Bank Note Engraving and Printing Company of a certain action pending in the Supreme Court of the State of New York, and said action was thereupon discontinued as against the Hamilton Bank Note Engraving and Printing Company, and the plaintiff also executed to said Hamilton Bank Note Engraving and Printing Company a certain release, and assented to the cancellation of two bonds filed in said action for $50,000 each, and one bond of $500, and said bonds were thereupon cancelled. . . .

" I find that said action in the Supreme Court of the State of New York was originally begun by the plaintiff against the Hamilton Bank Note Engraving and Printing Company as sole defendant, and that the said Hamilton Bank Note Engraving and Printing Company demurred on the ground, among others, that the Kidder Press Manufacturing Company ought to have been made a party. This demurrer was sustained by the New York court, the decision thereon is reported in 83 Hun, 593, which is made a part hereof and may be referred to but need not be printed, and the plaintiff amended and made the Kidder Press Manufacturing Company a party defendant.

" The Kidder Press Manufacturing Company was a non-resident of the State of New York, but its treasurer, W. P. Kidder, was personally served in New York City, which service was good legal service upon that corporation under the laws of New York.

" At the time of said payment the case in the Supreme Court of the State of New York was pending against the Hamilton Bank Note Engraving and Printing Company and the Kidder Press Manufacturing Company.

" I find that the said discontinuance, release, receipt and payment of said sum by the plaintiff all took place within the State of New York and that the entire settlement of the plaintiff with the Hamilton Bank Note Engraving and Printing Company was a New York contract, and I further find that the Law of New York as contained in sections 1942 and 1207 of the Code of that State is as follows :

" '§ 1942.  Joint debtors may compound separately.  Mode and effect.

" ' A joint debtor may make a separate composition with his creditor, as prescribed in this section.  Such a composition discharges the debtor making it; and him only.  The creditor must execute to the compounding debtor a release of the indebtedness, or other instrument exonerating him therefrom.  A member of a partnership cannot thus compound for a partnership debt, until the partnership has been dissolved by consent or otherwise.  In that case the instrument must release or exonerate him, from all liability incurred by reason of his connection with the partnership.  An instrument, specified in this section, does not impair the creditor's right of action against any other joint debtor, or his right to take any proceeding against the latter ; unless an intent to release or exonerate him, appears affirmatively upon the face thereof.'

" '§ 1207.  When judgment for plaintiff not to exceed judgment demanded.

" ' Where there is no answer, the judgment shall not be more favorable to the plaintiff, than that demanded in the complaint.  Where there is an answer, the court may permit the plaintiff to take any judgment, consistent with the case made by the complaint, and embraced within the issue.'

" The receivers contended and asked the court to rule that the payment by, and release to, the Hamilton Bank Note Engraving and Printing Company of February 6, 1906, is a bar in whole or in part to the recovery of damages by the said New York Bank Note Company against the said Kidder Press Manufacturing Company as decreed by this court under date of January 27, 1906.

" The plaintiff contended and asked the court to find and rule that said payment, release and discontinuance in no way affected its right to recover the amount fixed by the decree entered in this cause on January 27, 1906, from the respondent Kidder Press Manufacturing Company.

" I declined to rule as requested by the receivers, but found and ruled as requested by the plaintiff and ordered a decree in accordance therewith.

" But being of the opinion that this decree so affects the merits

of the controversy between the parties that the matter ought to be determined by the full court before further proceedings are had, at the request of the parties, I report the question for that purpose to the full court, such decree to be entered as justice may require."

The contract for the breach of which the plaintiff was given damages was made between the plaintiff's predecessor, the New York Bank Note Company, organized under the laws of the State of New Jersey, and the defendant corporation, and was dated October 12, 1891. Its material provisions were as follows:

"33. It is hereby agreed that the price of the press shall be the sum of Four thousand Five hundred dollars ($4500.) but that the amount of this contract shall be the sum of Six Thousand Dollars ($6000.) the additional Fifteen hundred dollars ($1500.) being a payment to the Kidder Press Company by the New York Bank Note Company for an insurement, protection, guarantee, contract and delivery to the Bank Note Company of a monopoly of all future machines built or that may be built by the Kidder Press Company or any party on the lines of its patents on the press herein contracted for, upon which there can or may be printed strip tickets substantially the same as those now printed by the New York Bank Note Company, or of similar form or design, to wit:

"34. The Kidder Press Company hereby agrees not to sell any presses on which strip tickets may be printed, as aforesaid, that they make, control, are interested in the patents on, may be interested in the patents on, or have been interested in the patents on, to any one except the New York Bank Note Company, the object being to insure the said press or presses against being used for the printing of strip tickets of form, design or purpose similar to those now printed or that may be printed by the Bank Note Company upon the press now operated by it, purchased from the Kidder Press Company. But there is nothing in this contract, nor is it the intention of either of the contracting parties, to limit the sale of this press alluded to above either as the one now used in the Bank Note Company purchased from the Kidder Press Company, or the one hereby contracted for to be delivered to the Bank Note Com-

pany by the Kidder Press Company, for any purpose except for printing of strip tickets substantially the same as those now made by the Bank Note Company. On the contrary it is the pleasure of the Bank Note Company, its officers and directors, as well as, presumedly, the profit of the Kidder Press Company, that it shall make, sell, deliver and collect the money for as many presses similar to the one now in use by the Bank Note Company, heretofore adverted to, or the one hereby ordered from the Press Company, and shall enjoy all of the emoluments of the utmost possible extension to the Press Company's business by reason of the sale of printing presses identical with those herein alluded to.

" 35. The Fifteen hundred dollars ($1500.) paid or to be paid to the Kidder Press Company, as herein mentioned, is for the purpose of securing to the New York Bank Note Company whatever advantages may arise from the impossibility of any of its competitors obtaining or using a press built by the Kidder Press Manufacturing Company of substantially the same design as those with [sic] which the Bank Note Company is contemplating using in its strip ticket business aforesaid.

" 36. This contract shall remain in force not to exceed a term of twenty years from the date of this contract.

" 37. The Press Company hereby agrees not to make alterations or additions to any existing presses that they have already built that would enable the press to print strip tickets, without requiring the parties owning press, or might buy it thereafter, to make the same terms and agreements regarding it as though it were a new machine.

" 38. The Kidder Press Company hereby states that the only presses of their manufacture upon which strip tickets can be possibly run are as follows : —

" One owned by Allen, Lane & Scott of Philadelphia, and

" One owned by Weed, Parsons & Co. of Albany.

" And the Kidder Press Company hereby agrees not to sell any press to either of the two foregoing concerns without an agreement which shall bring the presses that they now have, as above enumerated, capable of printing strip tickets, within the same restrictions as though these two presses above enumerated were sold to them now, subsequent to the date of this contract.

" 39.  It is hereby agreed and assented to by the Kidder Press Company and the New York Bank Note Company that the most feasible and proper way to protect the interests of the Bank Note Company in and to the proper control and ownership hereby acquired in the Kidder Perfecting Press, which is the technical name by which the machinery herein adverted to is known, is that whatever sales of this press or presses are made by the Kidder Press Company shall be made to the New York Bank Note Company for the account of the party desiring to use the press or presses, and the New York Bank Note Company shall execute a perpetual lease to said third party for such money as the Kidder Press Company shall nominate; but the New York Bank Note Company shall in no wise part with the title in and to the machine delivered, but shall retain its actual ownership of the press or presses under agreements permitting its use for all purposes except strip tickets, within the United States; but that the presses shall not under any pretext whatever be taken out of the jurisdiction of the United States of America during the said twenty years.  And this form of agreement, as substantially set forth herein, it is hereby agreed by the Kidder Press Company shall be used in whatever sales are made of its perfecting presses.  And the New York Bank Note Company shall deliver to the Kidder Press Company the full consideration it (the Press Company) may nominate, and the Bank Note Company shall have its own agreements with the purchaser in accordance with the above plan, and litigate at the Bank Company's own expense the agreements with said purchaser or purchasers if the agreements are broken."

*V. J. Loring,* for the Kidder Press Manufacturing Company.

*B. C. Moulton, V. J. Loring & F. B. Greenhalge,* for the receivers.

*A. H. Wellman,* for a majority of the stockholders and certain creditors of the Kidder Press Manufacturing Company.

*E. P. Lyon, I. R. Clark & G. F. Ordway,* for the plaintiff.

BRALEY, J.  The right of the plaintiff as a creditor to participation in the distribution of the assets in the possession of the receivers depends primarily upon the validity and construction of the contract made between the defendant corporation and the New York Bank Note Company of New Jersey, and later

assigned to the plaintiff. Appeals having been taken by all parties from the interlocutory decrees, the various questions of title, of liability and of the measure of damages, if the plaintiff is entitled to prove for any amount, are open. At the outset it appears that the defendant corporation, being engaged in the manufacture and sale of an improved printing perfecting press, entered into a contract with the plaintiff's assignor, a corporation which printed and sold strip tickets used by transportation companies, by the terms of which, among other provisions, it agreed not to sell this type of press to other customers to be used by them for a similar purpose. While the defendant corporation was left unrestricted to make and vend the press for other uses to which it might be adapted, yet as the principal object was to create a partial monopoly the first contention is that for this reason the contract was void. At common law a sound public policy was held to require that the individual effort and competition which furnished an opportunity for earning a livelihood or the extension of trade should be unrestricted, as the welfare of the community demanded that the industrial and business activity of its members should be unhampered. But a distinction was early recognized between contracts which wholly restricted trade, and those which partially limited its development and extension either as to territory or to persons; the first being held void, while the latter, if reasonable, have been upheld as valid. *Gamewell Fire Alarm Telegraph Co.* v. *Crane*, 160 Mass. 50, 56. *Anchor Electric Co.* v. *Hawkes*, 171 Mass. 101, 105. *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473. The nature of the business in which the New Jersey company was engaged appears to have been of such character that it was not unreasonable for its own protection that a stipulation should be inserted which left the defendant corporation at liberty to sell this press to all the world for other purposes, but prohibited sales to those who by their competition might and probably would ruin its business, and this restriction, therefore, did not render the contract invalid. *Morse Twist Drill & Machine Co.* v. *Morse*, 103 Mass. 73. *Gibbs* v. *Consolidated Gas Co.* 130 U. S. 396. 2 Kent Com. note (x) 467, *Restraint of Trade*, and cases there collected. *New York Bank Note Co.* v. *Hamilton Bank Note Engraving & Printing Co.* 180 N. Y. 280.

The defendant corporation further contends that the contract was in violation of the act of Congress of July 2, 1890, (26 U. S. Sts. at Large, 209,) commonly known as the anti-trust law, but, if applicable, neither in its answer nor by its cross bill is this ground for relief directly or inferentially stated. If at inception the contract was void as being prohibited by this statute, then to be available such a defence must be specially pleaded. R. L. c. 173, § 27. *Granger* v. *Ilsley*, 2 Gray, 521. *Bradford* v. *Tinkham*, 6 Gray, 494. *Rice* v. *Enwright*, 119 Mass. 187. *Hunting* v. *Downer*, 151 Mass. 275, 278.

It also is urged as another reason for avoidance that the contract was not within the scope of the defendant corporation's express or implied corporate powers. But it is a foreign corporation, and the terms of its charter are not shown. It is alleged in the original bill and is not denied by the answer, that it was organized for the purpose of making and dealing in printing presses, of which the manufacture and sale of the perfecting press comprised only a part. While created for the purpose of engaging in a particular kind of business, there was no prohibition upon the form of contracts it might adopt to effect a sale of its product, and it should not be permitted to repudiate as being in excess of its corporate powers a transaction which is otherwise valid and under which it received and has retained the consideration, when such a course must result in positive injury to the plaintiff. *Slater Woollen Co.* v. *Lamb*, 143 Mass. 420, 421. *Prescott National Bank* v. *Butler*, 157 Mass. 548, 549. *Nims* v. *Mount Hermon Boys' School*, 160 Mass. 177, 179.

The contract being neither immoral nor void for want of corporate authority, the defendant corporation became bound to its full performance. Without reviewing the evidence there was abundant proof to support the finding that by the sale of a similar press to the Hamilton Bank Note and Engraving Company, without the assent of the New Jersey company, there was a breach by the defendant corporation which entitled the New Jersey company to recover damages. But although this corporation was dissolved without having brought suit, and was succeeded by the present plaintiff, to which all of its corporate property including choses in action was conveyed and assigned, the fiduciary relations between the parties under the terms of the contract

relating to the proceeds of other sales were such, that, without a provision to that effect, which is not found, or without the defendant corporation's assent, which was not given, the plaintiff was not substituted, and hence the assignment passed only the bare right of action which previously had accrued to the assignor. *Boston Ice Co.* v. *Potter,* 123 Mass. 28, 30. *New York Bank Note Co.* v. *Hamilton Bank Note Engraving & Printing Co., ubi supra. Robinson* v. *Drummond,* 2 B. & Ad. 303. *Arkansas Valley Smelting Co.* v. *Belden Mining Co.* 127 U. S. 379. *Delaware County Commissioners* v. *Diebold Safe & Lock Co.* 133 U. S. 473. *Burck* v. *Taylor,* 152 U. S. 634.

Upon the entry of an interlocutory decree which thus properly defined and limited the plaintiff's claim, the case was referred to a master for the assessment of damages. To his report numerous exceptions were taken by both parties concerning the exclusion and admission of evidence, as well as to the rule adopted by him for the ascertainment of damages. While no appeal was taken by the plaintiff from the decree overruling the exceptions and confirming the report, the defendant corporation having appealed, its exceptions are next to be considered. These exceptions so far as they relate to the reopening of the hearing after the submission of the draft report call for no comment, as the admission of further evidence offered by either party after hearing their objections and before finally settling his report was within the master's discretion. Under the decretal order the master was not required to report the evidence, and those exceptions which either depend upon a different view of the testimony, or are based on the ground that some of his findings were not supported by sufficient proof, are not tenable and may be dismissed without further remark. *O'Brien* v. *Murphy,* 189 Mass. 353.

The remaining exceptions, which relate to the measure of damages, present the principal question.

It is evident that the plaintiff endeavored to obtain compensation based upon the difference between the cost of printing tickets and their price which the assignor was receiving under its contracts. But this estimate not having been taken as a measure of computation either by the master or the trial judge, the defendant corporation has not been prejudiced by evidence

admitted in support of this position, and its exception to such admission becomes immaterial. The report recites that the parties agreed that the sale to the Hamilton company was before the date of the assignment, and, as this sale was the specific act of violation, whatever cause of action the New Jersey company possessed then accrued. At that time the assignor owned two presses which if new could have been bought in the market for much less than the sum paid for the second press, the price of which also was taken as the basis of valuation of the first press bought before the contract was made. The value of both presses when fitted for use in printing strip tickets, and protected by the restriction, may be fairly said to have been equal, and besides, this value even if divided by the recitals in the contract was the total estimate fixed by the agreement. *Parker* v. *Simonds*, 8 Met. 205, 213. The difference between this amount, which as to one press was enhanced by the cost of certain mechanical changes, and the market price established the loss caused by the depreciation, and provided a correct measure of compensation. What further elements of damage might have been presented if the assignor had continued in business and brought suit need not be considered, as within this limit at least it would have been entitled to recover. *Westfield* v. *Mayo*, 122 Mass. 100, 105. *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90, 99. *Noble* v. *Ames Manuf. Co.* 112 Mass. 492, 497. *Somers* v. *Wright*, 115 Mass. 292. *Townsend* v. *Nickerson Wharf Co.* 117 Mass. 501. *Manning* v. *Fitch*, 138 Mass. 273, 277. *Whitehead & Atherton Machine Co.* v. *Ryder*, 139 Mass. 366, 371. *Abbott* v. *Hapgood*, 150 Mass. 248. The addition of interest was proper, for the amount assessed became due when the contract was broken, and as the plaintiff should be fully compensated it ought not to suffer loss from the delay in payment. *Hovey* v. *Newton*, 11 Pick. 421, 422. *Ainsworth* v. *Lakin*, 180 Mass. 397. *Peabody* v. *New York, New Haven, & Hartford Railroad*, 187 Mass. 489.

But although none of the exceptions can be sustained, it also is contended that this assessment should be reduced by deducting a sum subsequently received by the plaintiff from the Hamilton company. This question comes up in the form of a report which states that all the facts relating to the material

issues appearing in the record of the entire litigation are to be considered in its determination. After bringing an action at law in this State, which appears still to be pending and to which the original bill in the present case is ancillary, the plaintiff proceeded with an action against the Hamilton company already begun in another jurisdiction. A demurrer having been interposed, it had been obliged to join the defendant corporation as a party. *New York Bank Note Co.* v. *Hamilton Bank Note Engraving & Printing Co.* 83 Hun, 593. And instead of prosecuting the action here, in which any liability of the defendant corporation could have been speedily determined, it chose to proceed with the litigation in another forum. *New York Bank Note Co.* v. *Hamilton Bank Note Engraving & Printing Co.* 180 N. Y. 280. But wherever prosecuted, and whether at law or in equity, the plaintiff at common law had only one cause of action, namely, the chose assigned by the New Jersey company. It now suggests notwithstanding the express allegations of the bill before us to the contrary that the defendant corporation was joined merely as a matter of form, while relief and damages were asked only as to the principal defendant. When, however, the history of the entire controversy is read, form ceases to be of primary importance, and whatever the plaintiff's attitude the only object sought was the recovery of damages from both parties, and for relief by injunction solely because this defendant had broken its contract. *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 176 Mass. 151, 152. The multiplication of actions for the same cause whether sounding in tort or contract does not have the effect of multiplying damages, and while the release under seal is couched in general terms, no attempt was made to show the existence of any other demand, and it is to be assumed that the suit was brought and prosecuted in good faith. *Smith* v. *Way*, 9 Allen, 472. *Burnett* v. *Smith*, 4 Gray, 50. Indeed the discontinuance of the action and the discharge of the bond sufficiently indicate that the compromise was regarded as a settlement of the litigation with the releasee. See *Brown* v. *Cambridge*, 3 Allen, 474, 476; *Aldrich* v. *Parnell*, 147 Mass. 409. It is not material to determine whether the defendant corporation and the Hamilton company were joint debtors within the meaning of § 1942 of the Civil Code of the State of New York,

relating to the compounding of claims against joint debtors, under which one debtor is not discharged by settlement with the other, as the plaintiff's claim had not been merged in a joint judgment.   Before this settlement had been effected the amount which the plaintiff could recover had been established by a decree of a court of competent jurisdiction, to the final decision of which it had submitted its cause.   In either jurisdiction, although the breach of the contract in itself was not a tort, it was entitled to but one satisfaction of damages, whether obtained by compromise when unliquidated, or by payment after the amount had been ascertained and adjudicated.   *Vanuxem* v. *Burr*, 151 Mass. 386, 388, 389.   In *Stimpson* v. *Poole*, 141 Mass. 502, 505, it was said " money paid, which is to be in full for an unliquidated or a disputed claim, is taken in discharge of it, and constitutes a full defence against any further assertion of the claim.   What has been received is in law deemed to be a satisfaction of the claim."   That the Hamilton company in fact might not have been liable to respond does not affect the adjustment or the application of the payment.   *Leddy* v. *Barney*, 139 Mass. 394, 397.   If the reservation by the releasor that it did not relinquish its claim against the defendant corporation prevents the release from being a full discharge, the receipt of a partial payment likewise is to be treated as a partial satisfaction which the plaintiff must apply in reduction of the sum awarded by the decree.   *Brown* v. *Cambridge, ubi supra.   Wood* v. *Mann*, 125 Mass. 319.   *Hudson* v. *Baker*, 185 Mass. 122, 125.   This conclusion being adverse to the plaintiff, it then contends that the appeal of the New Jersey company from a decree which denied a petition for leave to intervene should be sustained.   After many years of litigation, when it became apparent that the contract was unassignable, this right is asked for the purpose of getting enhanced damages, which if recoverable would go to the plaintiff, but if for no other reason the lapse of time, united with the persistent and unsuccessful effort to maintain a contrary proposition in the courts of another State at a large expense to the estate, is sufficient to justify the refusal by a court of equity to allow further delay doing manifest injustice to other creditors as well as to the debtor.   *Cooke* v. *Barrett*, 155 Mass. 413, 414.

We do not find it essential to consider specifically other questions of procedure raised by the appeal of the receivers and referred to in their brief. It may be presumed that until their accounts are passed and the claims of intervening creditors have been adjusted no order for distribution will be made, and that payment to the plaintiff will not be ordered until these steps have been taken.

It follows from what we have said that all the interlocutory decrees and orders from which appeals have been taken are affirmed. But while affirming the second decree because no error is found therein at the time of entry, it is to be modified, either by an interlocutory or in the final decree, by deducting from the amount of damages the payment received by the plaintiff, with such allowance of interest at the legal rate as may be considered expedient.

*Ordered accordingly.*